This must be all deja vu all over again. You have to speak up, counsel. I can't hear you. Good morning. I'm Peter Lively, counsel for Appellant Rick Garcia. May it please the Court. You've just entertained arguments from Chapter 13, Trustee, arguing to throw out the congressionally approved statute in the form that the judicial counsel created to determine a new defined term, disposable income, that's to be attributable to the unsecured creditor class only, and instead replace it with the old way of doing things, which was Schedules I and J, and that ignores the problem that results that if you use that Schedule I and J number, that figure has to go to the unsecured class. There wouldn't be anything left over to pay to secured creditors and administrative claims, and a person, a to pay the arrearage on their home loan if all that money is going to the unsecured creditors, because the statute does say that this projected disposable income now goes to the unsecured creditors. It's no longer a measure of a planned payment that gets distributed to everybody that's a planned payee. It's a whole new test. It's a means test, and it's objective. It doesn't let courts, judges, excuse me, bankruptcy judges, have discretion as to what expenses might be allowable to particular debtors, especially those debtors and particularly those debtors that are above the median. That's a creditor protection. I think before the change, creditors were upset because certain bankruptcy judges would allow really high expenses, and the means test has now capped expenses for above-median income debtors. And the form created by the Judicial Council to interpret the statute renders a number that is attributable just to the unsecured creditors. It's not the planned payment is what has to be paid to cover the percent that goes to the government for the administration of the case, the debtor's counsel amount that the consumer can't afford to pay at the beginning of the case and has to pay over time. And anything that comes up in the case that the debtor's counsel has to do, we have to submit a fee gap and hope that there's some money there to be paid. And, Mark, why does your case differ from the previous case on the issues to be decided, or is it the same thing? It's essentially the same thing, except that my client volunteered to pay some funds despite the... Well, that's what happened in the other case, too. It's the same in the sense that, of the issues that you're asking. The court went the opposite way from the previous court. Exactly. The court, the bankruptcy court, wants to throw out the definition of disposable income and replace it with Schedules I and J, trying to give meaning to the word projection, where you say projected disposable income. The court's, bankruptcy court's opinion was that that projection somehow modified the defined term disposable income in such a way that you throw out the means test and you go back to the old way of doing things. And what or how do you determine projected disposable income? What do you say it is? Well, a projection in... Is it strictly on the form or do you do something else with it? It's strictly on the form. The disposable income is a new definition. And we're dealing with an average of income that captures debtors in a situation where they can no longer, you know, stop working and file a Chapter 7 because they don't have any income. It captures the six months' previous income. And then it backs out these maximum expenses and other expenses, and you have a number that's attributable to the unsecured class. Now, that number is then projected by a variable that in this code section, this variable is assigned a value. And in this subsection of the code, it says for the purpose of this subsection only, this phrase applicable commitment period is assigned a value. For a debtor above median income, the applicable commitment value is assigned 60 months. It's a five-year period. And so you project over 60 months the congressionally mandated disposable income figure to derive what the unsecured creditors must receive. You don't think that means that you have to keep it open for 60 months? Well, that would be a ridiculous result to have a debtor stay in a case for five years or any additional time beyond the point where the disposable income amount to the unsecured creditors can be paid in addition to whatever else has to be paid by the debtor. For example, a foreclosure or rearage to save a home. Well, why would it be an absurd result if during that five years the debtor were to markedly increase the income so that the creditors could come in and say the situation has changed and now we do have some real projected disposable income? Well, there is a code section that provides for modifications of the plans once they're confirmed.  So you can't modify a plan once it's been confirmed if it's unless it's during the period of the plan? It has to be during the period of the plan. So therefore, it's not absurd to say for five years your payments will be zero unless there's a motion to modify the plan? Well, it's administratively inefficient to have a debtor in a case for five years where no payments are due to creditors. And it's unfair to the other creditors. But it would be terribly beneficial if the creditor, if the debtor could structure his current monthly income just before he was going to bankruptcy to be low. Therefore, he wouldn't have any projected disposable income. And then after, according to you, there's no period of commitment because he's not He doesn't owe anything. And then he can go out and get another job, and some of those are his creditors. Right? There's always going to be the risk for a fraud, a problem with a particular individual. It's not a fraud. There's no deceit there. There's no misrepresentation. It's just being what the classical economists say is a rational economic being. Congress gave us current monthly income as an average of the past six months and excluded certain types of income. And that figure is fair to the creditors overall. I'm not talking about that. I'm talking about the five-year period. Five years of paying zero, if that's the plan, allows the creditors to come in later, a year or a year and a half later, and say the situation has changed. Now he's got real disposable income. We should be getting some of it. Under your theory, the commitment period should be one day. It should be zero because he doesn't have any disposable income. Well, it's inconsistent with the discharge and the fresh start. The discharge provisions in 1328 He should get discharged and a fresh start after five years, not the day that he shows he's got no disposable income. However, Your Honor, respectfully, the discharge section in Chapter 13 provides for discharge once the payments under the plan have been made. If there are no payments to be made because disposable income is zero. We won't know that for five years because the creditors have a chance to come in and reopen on changed circumstances. I don't agree with that interpretation of the discharge. I can see why. I believe that if Congress has said disposable income is zero and the debtor elects to pay something to the creditors, the debtors should be encouraged to do so. I agree. And there is a congressional report in the 70s that says the debtors don't want to elect Chapter 7 and get out of the debt entirely. They'd like to pay something. If they do so, they shouldn't be subjected to five years of servitude for the benefit of the unsecured creditors. That wasn't part of their contract when they received the credit card in the mail and when they defaulted and their interest rate went through the roof and they had some hard times. It's a different view on that. Your Honor, I'd like to, if possible, preserve some time for rebuttal, but. What did your client offer to pay over what period of time? My client offered to pay $500 a month over 36 months to fund the plan, which includes payments of the interest rate. Similar to the other debtor in the previous case that hers was $1,000 instead of $500. That's correct. But it's a similar situation. Offered to pay it over three years. Yes, Your Honor. And I think debtors should be encouraged to do that. And at the point that the debtor pays what the debtor has committed to pay and the plan has been confirmed because that amount is more than what is required to be paid under the test, under 1325. You're saying really your client doesn't have to pay anything. That's correct. Like the previous debtor. Exactly. Do you disagree with that previous debtor's position on the law as articulated here? I completely agree with the debtor's position on it. But you say that three years of $504 should be all she should pay, not over five years. Yes, Your Honor. Where is your authority for, in the Bankruptcy Code, for any commitment period other than five years? The section that describes the content of a plan is 1322. And under D, the reference to plan length doesn't have applicable commitment period as a term. If Congress wanted to establish a five-year requirement for a debtor, Congress could have easily inserted applicable commitment period right in there under D1 and said above-median income debtors are debtors for five years. They didn't. They set a cap. It's the same cap that a below-median income debtor has. It's five years. Congress doesn't want debtors in Chapter 13 for longer than five years. That's what Chapter 11 is for. If you've got more debt or you've got bigger problems, go into Chapter 11. The code section that uses applicable commitment period says right in there, for the purposes of this subsection only, it assigns a value to the variable that's a five-year period, a 60-month period. And when you multiply that time period by the amount of money per month, you get a dollar amount. It's an algebraic formula. The dollar amount per month is now newly derived for unsecured creditors. It is no longer the way the law used to be where we're trying to figure out what the planned payment should be here for the above-median income debtor. Your Honor, if I could reserve the rest of the time for rebuttal. What's the benefit between choosing between a 7, 11, and 13? Well, a 7, in a consistent reading of the code, a 7 persons. Those are all lucky numbers, 7, 11, and 13. In Vegas, maybe. A debtor that comes in my office does not want to be in for any of those chapters. But a 7 debtor is seeking a discharge of debt immediately and is subject to a test for their income based on the same 6-month historical average and the standardized expenses, but is also subject to what's called a liquidation analysis, which says, okay, you've got some exemptions provided by the state. If you've got some equity in your house or your car or something else, then that has to be distributed to the creditors if you want to keep that asset. A lot of times a debtor will elect Chapter 13 because they want to. Unless you have a, well, it depends on, what's a homestead exemption? Homestead varies depending on whether you're married or single or whether you're disabled or over a certain age, whether you committed a crime. Now, that's a new caveat. But those exemptions. Okay, Ron. Oh, 50 single, 75 married, 125 to 150 if you're disabled or over a certain age. What age? I believe it's 62. I could be mistaken. I'm glad I hit the max. Well, if you get in a situation where you want to save your house and the liquidation analysis says that if you go into 7, the trustee is going to sell it and pay your unsecured creditors, then you better go into 13 and pay that same amount that the creditor would have gotten through the 7 trustee to save your house. And if you have a rearage on your house, that if you go into a 7, the creditor does a motion for relief and then goes out and forecloses on your house because you didn't have a payment plan, you better be in Chapter 13 because that's where you have the protection of the court. You have the automatic stay. You establish a pecking order for creditors. You've got to pay your administrative out. Then you pay your secured. Then the priority, the government's got to get paid on the taxes. There's a lot of tax cases now. And then the unsecured get what was left over. That's the way the old law was. This new law has turned the test all the way around. The new test is a form that maximizes certain expenses for the above median income debtor and takes a fair average of the past income to prevent a debtor from stopping work and then filing 7. A 7 debtor is not subjected to a 5-year projection. They're not meant to stay in Chapter 7 for 5 years. They're given a fresh start. We want debtors to have fresh starts. They go out. They earn more money. They pay more taxes. They consume. It helps the economy. We really want to balance fresh start with a modification of the contract of the unsecured creditor. We're dealing with unsecured creditors who have flooded the consumers with risky debt. Unsecured credit is risky. It carries the highest interest rate. There's no collateral. The chances that a debtor, given all this easy money, is going to have some kind of life circumstance that puts them in a situation where they can't pay and they default on one obligation. And then, gee, they're hit with a universal default. Now, all of their credit interest rates are now going to 30 percent. So they have to come into court and they've got to get some protection. And if they come in and they want to volunteer to pay something morally or let's say they incurred some debt recently because they took a cash advance to pay their mortgage and they're afraid the creditor is going to sue them, you know, to keep that debt from being discharged, well, they might want to volunteer to pay that in a 13 to prevent litigation. That's judicial economy, too. We don't want litigation in all these sevens over whether a debt's dischargeable because a consumer went out and took a cash advance and tried to save their house and then realized they couldn't and then went into a 13 to pay the arrearage off over time. If I could stop here and save my three minutes, I'd appreciate it. Thank you. Thank you, Your Honor. Good morning. May it please the Court. I'm Peter Coyote. I'm an attorney for the appellee, Kathy A. Dockery. Mr. Your Honor, as the appellee, I'd like to thank the Court for taking this matter up on direct appeal. It is a new procedure and this is an important issue in Chapter 13, Bankruptcy. I first wanted to clarify the issue before the Court. In this particular case, there was no issue or controversy with respect to the amount of projected disposable income or income being paid to the unsecured creditors. The trustee and the debtor in this case were in agreement as to the amount that was to be paid on a monthly basis. The only issue today is whether or not the plan must be a five-year plan and not a three-year plan as being proposed by the debtor. That is the only issue. And, Your Honor, with respect to the applicable commitment for any work. Could it pay out whatever the sum is and be over five years instead of over three years? Yes, Your Honor. The trustee's position is that the Code has a mandatory requirement on a 1325B4, the plan be a five-year plan, and there's no discretion with respect to the length of the plan. The amount at the end of the five years is the same as it would be at the end of three. No. Not necessarily. Not necessarily. You pay $504 a month. If you pay it for five years, you pay it 60 percent more than if you did pay it for three years. That's correct, Your Honor. And that actually effectuates Congress's intent. And one of the policies under BAP CPA of the Bankruptcy Abuse Prevention Act with respect to increasing the dividend that's paid to unsecured creditors. Was the debtor's actual or disposable income, was it zero like the previous debtor? And then he offered to pay the $500? Actually, Your Honor, it was a negative $68. Okay. And based on the amount on Schedule I and J, that is the exact amount that was proposed in the plan, the debtor's income minus the debtor's expenses. So the form, under the form, he had less than zero, right? That's right, Your Honor. He didn't have to pay anything. He didn't have to pay anything, Your Honor. On the other hand, the debtor resorted to Schedule I and J. What if he had taken that same sum of money and whatever it was, $504 a month, spread it over five years? Would it have been all right? Your Honor, if the debtor had proposed a five-year plan with that plan payment, the trustee would not have objected to confirmation of this plan. What did he say? If the debtor had proposed a five-year plan with the plan payment of $504.04, the trustee would not have objected to confirmation. No, no. I'm asking if the debtor had proposed a plan, didn't that pay anything? If he had proposed a plan, this was 36 months at $500 a month at 16, right? How many thousand dollars? $13,000. No, no. What is it now? About $18,000. $18,000. I'm not used to dealing with a big number of figures. So if he had just taken that amount and spread it over five years, that would have been okay, huh? Your Honor, the trustee's position in this case with respect to projected disposable income is similar to the U.S. trustee's position. The B-22C form does create... Can't you answer my question? Yes, Your Honor. Most likely, the trustee would not have objected to confirmation, and that would have been okay with the trustee. And if we remanded with instructions to have the $18,000 paid over five years rather than three years, would you object to that? Why don't you mediate this case? This is... Your Honor, the trustee did offer a laurel leaf or, I'm sorry, a fig leaf to the debtor's interest. But the fact is, due to the fact that this is a matter of first impression before any circuit courts, the debtor wishes to proceed with this appeal and have mandatory authority with respect to how this laws to be interpreted by the various bankers' courts in the Ninth Circuit. The offer was that the debtor remain in the plan for 48 months rather than 36 months. How many months? 48 months, Your Honor. Oh, 48 months, I see. That was the compromise, Your Honor. Four years, I see. Yes, Your Honor. Is it your position that based on the fact that the debtor's income comes above this median income, then he has to have a five-year plan for a payout period under the new bankruptcy code? Is that what your position is, or did I miss it? Yes, it is, Your Honor. Okay. That is the position. Has the Court received the egg? But you were willing to take a four-year plan? Yes, Your Honor. As a negotiated position, in light of the fact that there is ambiguity with respect to law, this is new law, and there is no guiding authority with respect to the actual term of the plan. Is your position any different from the trustee's position in the preceding case, or is there some little variation there? Because if we decide both cases by this panel, we at least want to have it consistent. The trustee's position in this case is more analogous to the U.S. trustee's position with respect to the value of the 22C form and Congress's intent with determining what this form is for. The trustee's position is that the B-22C form should be given presumptively or should be presumptive, projected, disclosable unless there is evidence to show that that is not the case. And that would be, once again, the review of any other evidence that may be produced by creditors, the debtor, and also the trustee. And once again, this is a story that has two edges. Basically, if the debtor, for instance, has a drop in income prior to filing, but outside of the period prescribed within Code Section 10110A, the current monthly income calculation, for instance, the debtor loses his or her job, that fact should calculate into what is available to pay creditors in the case. Otherwise, the result is an infeasible plan. This debtor is denied any relief under Chapter 13 of the Bankruptcy Code. This is a double-edged sword. And in order to provide the best and most objective means for the court to determine what the projected disclosable income may be in a case, the court should be able to examine evidence with respect to what the debtor's circumstances are at the time the plan is ready to be confirmed. By doing so, this creates a workable system for all debtors, creditors, and trustees across the country with respect to determining how much should be paid to unsecured creditors and what the plan of payment should be on a monthly basis. So are you saying that the bankruptcy judge needs some discretion here? Yes, Your Honor. The other said he doesn't have any discretion. The other side said he doesn't have any discretion. That's what I thought I heard. Are you speaking of the debtor's side, Your Honor? Yeah, these other guys. Well, the debtor's side. The other, the Justice Department in Washington. I believe the Justice Department's position was essentially that there is discretion in circumstances where there is sufficient evidence to show that the B-22C form is inaccurate and does not provide a realistic perspective or realistic result with respect to what should be paid to unsecured creditors. That was their position. The trustee's position in the prior case was that the B-22C form should be examined, but additionally that Schedules I and J should always be examined along with that form. They have equal weight, in other words. The trustee in this case, her position is that the B-22C form is presumptively correct. However, that presumption, this is a rebuttable presumption that may be rebutted by evidence provided by any parties to the case, including the debtor. And this will provide a workable system for all parties to the case and provide not deny Chapter 13 relief to debtors who have experienced a change in circumstance, such as going on disability, losing their job, changing a job which has less income, prior to even confirmation of the plan, which is after the filing of the case. But this form, 22C, was developed as a result of the new bankruptcy law, right? That's correct. I mean, there wasn't one before. Yeah. And they set up certain types of expenses just as a matter of course, right? That's right. So that's factored into that. That's right. Is there any portion of the new Bankruptcy Act which uses the word presumption with respect to B-22 or anything like it? I mean, I come from a State, California, where presumptions can only be created by a legislature. I believe so, Your Honor. Is there anything in the Act which talks about presumption? Well, please. Go ahead. Look under P. Your Honor, I'm looking at 707B of the Bankruptcy Code. In this section, this is the section that is the means test in Chapter 7, Bankruptcy. And we're not talking about Chapter 7 Bankruptcy. We're talking about Chapter 13 Bankruptcy. Yes, Your Honor, but this portion of the code has been incorporated into 1325B-3. And therefore, it is part of Chapter 13. This section speaks of the presumption that the debtor is abusing the system if there is sufficient income on a monthly basis to show that there is an amount that can be paid to unsecured creditors. So my answer is the debtor is abusing Chapter 13 if there is sufficient monthly income left over to pay his creditors. Chapter 7 Bankruptcy is abusing the provisions of Chapter 7 Bankruptcy if there is sufficient income to pay creditors and that debtor should, therefore, be converted to Chapter 13 Bankruptcy and pay some portion of his income to his creditors. The Court's question was is there anywhere in the Court's question was is there anywhere in the Court's question was is there anywhere in the Court's question That is 707B, B, Roman numeral, little i. 707B, Roman numeral, little i. Yes. In any proceeding brought by this subsection, the presumption of abuse may only be provided by demonstrating special circumstances. That is the language in the code. Now, this has actually been incorporated in its totality in Chapter 13. And is this argument made in your brief? With respect to the presumption, Your Honor? Yes. Yes. There is argument in our brief which covers the presumption that the B-22C form is projected disposable income and that presumption may be rebutted by evidence showing otherwise. And this has been fully incorporated in Chapter 13. We believe that is the most that provides the Court with and the language in the code and incorporates each and every word in the code in addition to the means test in Chapter 13 gives meaning to every word in the code and still provides a meaning to the word projected disposable income in 1325B1B. This interpretation is also the interpretation adopted in the Slusher case, which is one of the cases that I actually forwarded to the Court in my 28J letter. And we believe that the trustee's position is that this is the most, I guess the least flawed of all the interpretations that have been presented to the Court today. All right. That's it. Yes, Your Honor. Thank you. Mr. Lively, would you address that last point? Certainly, Your Honor. Because I'm concerned if Chapter 13 does incorporate the language of Chapter 7, that there is a presumption the debtor is abusing bankruptcy if it is shown there's dollars, money left over to pay creditors. And then that might modify the concept of projected disposable income into creating it as a presumption under B-22 and not simply a determinative test.  Yes, Your Honor. Congress created the means test and defined disposable income and said to project it. The definition of disposable income says CMI for the current monthly income, the average, and then backs out expenses referring to the expenses that are incorporated in the judicial counsel form B-22C.  So far, so good. The reference to 707B2BI presumption is where you fail the B-22's form that you use in a Chapter 7, which is called the B-22A, as opposed to the form you use in a B-22C for 13. It's not the same form. Not the same form. In fact, the form doesn't even allow the debtor the qualified retirement deductions that the code says in 541B7V1 that aren't property of the estate. So that's a different matter. I think that form's flawed. But the presumption referenced in 707B2BI is a presumption of abuse where you fail the B-22A form. And the rebuttal of the presumption of abuse talks about adjusting CMI for special circumstances downward. And the special circumstances are a serious medical condition or a call or order to active duty in the armed forces to the extent of special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative. So the presumption in no way refers to what disposable income is in a Chapter 13 or whether you are to project that number over a 60-month period as directed by 1325B. The presumption is as to the gross amount of CMI to be reduced only by special circumstances such as you've indicated. The presumption is set forth as a presumption that can be rebutted as to an abuse for a Chapter 7 debtor receiving a fresh start without any payments, where a Chapter 7 debtor fails the B-22A by having a dollar amount at the end of the form when multiplied by a variable is within a certain range. If they have a certain dollar amount at the end of this complicated form and it's too high, then the debtor or anyone can try to rebut the presumption that it would be abusive for that debtor to get a complete fresh start without any payments by introducing special circumstances to modify the current monthly income or adjust the expenses. But those adjustments and modifications aren't available to the bankruptcy judge under 1325B. You're saying it's strictly reserved for a Chapter 7? Absolutely. And that's exactly what the statute says. If you've got that excess, they kick them over to 13. Exactly right by a motion. Okay. I'm getting old, so I'm thinking about my legacy. I'm just kidding. I'm just always curious. Have any of you ever heard of the equity funding reorganization page? Raise your hand. We've got two smart people here. I handled that back in 1972 and it was the largest corporate fraud perpetrated in the history of the country at that time. And it was very successfully carried out. We had an organization of equity funding that consisted of like 98 separate subsidiaries all acquired and not one honest dime was used to put it all together. And eventually everyone was paid, including the unsecured, including the shareholders who were treated as fraud creditors. Okay. Did any of you know how the name was changed from referee to judge in bankruptcy? Remember I told you about my friend, the congressman? He did that after he met Danny Collins. You know Danny Collins? Not familiar with him. He was a classmate of mine in law school. I'm not very good with names, Your Honor. Huh? Not very good with names. Well, you've heard of George Washington? Yes, I have. They taught me that in school. Anyway, the congressman was on judiciary then and I put him together at my house and had a wonderful referee in bankruptcy, Moriarty, who was an incredible public servant, formerly served in the Justice Department. So the name was changed from referee to judge in bankruptcy. And that was the congressional intent. It's been a long day and a long week and so I wish you all a pleasant weekend. I'm sure my colleagues joined me in that. It's been a privilege to be here. Thank you. Thank you. All rise. This court for this session stands adjourned. Thank you.
judges: Pregerson, Siler, Bea